**FIRST STRAWN NATIONAL BANK,**
Appellant,

v.

**Bill GLIDEWELL, Appellee.**

No. 3339.

Court of Civil Appeals of Texas.

Eastland.

Nov. 15, 1957.

Rehearing Denied Dec. 6, 1957.

J. R. Creighton, Mineral Wells, Frederick G. Harmon, De Leon, for appellant.

Sam Russell, Stephenville, for appellee.

GRISSOM, Chief Justice.

L. H. Turner was engaged in the business of selling livestock through an auction ring for a commission, giving his check to the seller and receiving the check of the buyer. Bill Glidewell sold some livestock through Turner for $970.85 net, for which Turner gave Glidewell his check on the First Strawn National Bank. Glidewell presented said check to the Strawn bank for payment on October 11, 1955, but the

bank refused payment, saying that Turner did not have that amount on deposit. Whereupon, it was agreed that Glidewell should leave the check and the bank would collect it when Turner had the amount thereof on deposit. On October 10th, Turner had deposited the proceeds of his last auction sale in the Strawn bank. This deposit consisted of checks on other banks aggregating $7,919.79. Glidewell's check was never paid and he sued the bank for the amount thereof, alleging, among other things, that when he presented Turner's check for payment on October 11th, and thereafter, Turner had funds on deposit sufficient to pay it; that said bank paid other checks for more than the amount of Glidewell's check out of said deposit and on October 13th, sold Turner, out of said deposit, a cashier's check for $1,473.79 and, as a result thereof, Glidewell lost the amount of his check.

A jury found that (1) on October 11th Turner had on deposit funds subject to check sufficient to pay Glidewell's check; that (2) Turner did not stop payment of Glidewell's check on October 13th; that (3) the bank did not accept Turner's deposit of October 10th for collection only; that (4) when Turner purchased a cashier's check on October 13th he did not order the bank to issue it before paying Glidewell's check and that (5) other checks paid by said bank on and after October 11th were not in the bank and presented for payment before Glidewell's check was left for collection.

The cause was so submitted without objection or request for other issues and, on the answers thereto, judgment was rendered for Glidewell for the amount of his check, with interest. The bank has appealed. The substance of appellant's points is that there was no evidence, or that it was insufficient, to sustain said answers. The bank concedes that if, at the time Glidewell left his check for collection, or thereafter, Turner had on deposit funds out of which

the bank could have paid his check, after paying all others then in the bank that had been previously presented for payment, it had the duty to pay Glidewell's check.

The bank contends that the checks on other banks, aggregating $7,919.79, deposited by Turner on October 10th, were accepted for collection only; that, although the ledger sheet showed a credit to Turner of said amount, such credit was tentative and did not represent funds on deposit subject to payment of Turner's checks and, therefore, said deposit was not available to pay Turner's checks until collected. The bank says that it paid checks other than Glidewell's because they were then in the bank and had been presented for payment before Glidewell's check and that in paying them it loaned, or advanced, such amounts to Turner, believing it could be collected from the checks deposited by Turner and not yet collected, but that it had no duty to loan Turner the money to pay Glidewell's check.

The bank says that before it received payment of all of said checks Turner, on October 13th, demanded a cashier's check for $1,473.79, which reduced Turner's account, after all the checks deposited on October 10th had been paid, so that the balance was insufficient to pay Glidewell's check and that when Turner demanded said cashier's check the bank examined the record of the deposited checks and concluded it would be safe in advancing said amount and, so believing, did advance, or loan, said amount to Turner.

■ The bank says that because a "signature" card signed by Turner had printed thereon a statement that in receiving items for deposit or collection the bank acted only as the depositor's collecting agent there was thereby created an express contract which, as a matter of law, defeated Glidewell's contention and the jury's finding that Turner had funds on deposit subject to check sufficient to pay Glidewell's check. The bank agrees that proof that the de-

posited checks were endorsed generally and placed to Turner's credit established prima facie that Turner had said amount subject to check, but it says that said prima facie case was destroyed by the written contract evidenced by the signature card. We do not think this was conclusive of the agreement existing when the checks were deposited.

Glidewell contends that when Turner deposited said checks aggregating $7,919.79 that, under Turner's agreement with the bank, said checks were received and deposited as cash and Turner then had on deposit funds in the amount of said checks, as reflected by the ledger, and, therefore, the bank should have paid Glidewell's check therefrom.

■ Since the bank concedes that if, at the time Glidewell left his check with the bank on October 11th, or thereafter, Turner had funds on deposit out of which the bank could have paid his check, after paying all others then in the bank that had previously been presented for payment, it had the duty to pay Glidewell's check and its points are that there is no evidence, or that it is insufficient, to support the jury's findings, we may dispose of the case by deciding whether the evidence sustains the findings. There is evidence that Turner had been paying said bank $250 to $400 per month as a "float" charge. Neither its meaning nor the manner of determining the amount is definitely established by the evidence. The testimony of Mr. Turner is subject to the interpretation that, in consideration thereof, the bank had agreed to treat such deposited checks as cash and pay Turner's checks thereon before the deposited checks were collected. The circumstances surrounding the transaction furnish some support for this contention. There is evidence that from October 10th through the 14th the bank did pay out of Turner's account, supported only by such deposited checks, thirty-one other checks. Turner testified, in ef-

fect, that the bank habitually paid his checks out of such deposits before the deposited checks were collected. It is undisputed that several days after Glidewell presented his check for payment and left it for collection that said bank issued to Turner a cashier's check for $1,470.79 and charged same, plus a $3 exchange fee, to the account created by said deposited checks. Whether Turner demanded that said cashier's check be issued before payment of Glidewell's check is disputed. It is undisputed that, regardless of the payment of other checks out of said deposit, but for the sale of this cashier's check there would have been on deposit from the collection of the checks deposited on October 10th sufficient funds to pay Glidewell's check. Whether Turner directed issuance of this cashier's check in preference to payment of Glidewell's check was an issue of fact. The bank's argument that Turner "demanded" issuance of the cashier's check before payment of Glidewell's check and that the bank decided to loan him the amount of the cashier's check are not entirely consistent. There is evidence from which it may reasonably be concluded that prior to the time Glidewell left his check with the bank for collection the Stokers left with the bank for collection two checks signed by Turner, but, at Turner's request, they had been withdrawn and were not in the bank when Glidewell presented his check for payment and left it for collection. There is evidence that between the 11th and 14th of October said bank, without Turner's knowledge or consent, paid out of said deposit cashier's checks to the Stokers for more than the amount of Glidewell's check. It is admitted that during said time the bank deducted $670.34 from Turner's said deposit to pay his overdraft. All the checks totaling $7,919.79, deposited by Turner on October 10th were paid. From all the facts and circumstances we conclude the evidence was sufficient to support the jury's findings. The judgment is, therefore, affirmed.